UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:

**AUDREY L. PUSEY,**
**Plaintiff,**

v.

**FLORIDA ATLANTIC UNIVERSITY**
**BOARD OF TRUSTEES**,
Defendant,

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff AUDREY L. PUSEY ("Plaintiff" or "Ms. Pusey"), by and through undersigned counsel, sues Defendant FLORIDA ATLANTIC UNIVERSITY BOARD OF TRUSTEES ("Defendant" or "FAU") and alleges as follows:

## INTRODUCTION

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), and the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq. ("FCRA"), to correct unlawful employment practices based on sex discrimination, retaliation, hostile work environment, and age discrimination, and to make Plaintiff whole, including through equitable relief and damages as permitted by law.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* This Court has supplemental jurisdiction over Plaintiff's state law claims arising under the Florida Civil Rights Act pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices complained of herein were committed in Palm Beach County, Florida, which is within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. On June 24, 2024, Ms. Pusey made an initial EEOC inquiry alleging discrimination and retaliation by FAU. On January 13, 2025, she timely filed an EEOC charge (No. 510-2025-03526) alleging discrimination based on sex, age, and retaliation within 300 days of the challenged acts. Florida is a deferral state.

4. On January 22, 2025, Ms. Pusey filed an Amended Charge under the same number, adding particulars of the discriminatory and retaliatory conduct.

5. On September 30, 2025, the EEOC issued a Notice of Right to Sue. This Complaint is filed within 90 days of receipt. All conditions precedent to suit have been satisfied or waived.

## PARTIES

6. Plaintiff Audrey L. Pusey is an individual who is domiciled in Delray Beach, Florida.

7. Ms. Pusey is a citizen of the United States and a resident of the State of Florida. Ms. Pusey submits herself to the jurisdiction of this Court.

8. Ms. Pusey, at all times relevant hereto, was an employee as defined by Title VII, the ADEA, and the FCRA, serving as Dean of Students and Deputy Title IX Coordinator for the Division of Student Affairs at Florida Atlantic University.

9. Defendant Florida Atlantic University ("FAU"), at all times relevant hereto, was an employer as defined by Title VII, the ADEA, and the FCRA, employing more than 500 employees and conducting business at 777 Glades Road, Boca Raton, Palm Beach County, Florida 33431.

## STATEMENT OF FACTS

10. Ms. Pusey is a woman born on April 15, 1968. She was 56 years old at the time of her resignation effective February 19, 2025.

11. Ms. Pusey is a first-generation FAU alumna with over 23 years of experience in the Student Affairs field.

12. Ms. Pusey was first employed by FAU from Fall 2003 to June 2006 as a Resident Coordinator, hired by Dr. Larry Faerman when he served as Assistant Director of Housing. She earned her Master's degree in December 2005 and voluntarily resigned in June 2006 to pursue a career opportunity with the University of California system.

13. On March 6, 2017, Ms. Pusey was rehired by FAU as Assistant Dean, Student Affairs at age 49. As part of Ms. Pusey's responsibilities as the Assistant Dean, she also served as a Deputy Title IX Coordinator.

14. On July 1, 2019, she was promoted to Associate Dean, Student Affairs. On July 27, 2019, she was appointed Interim Dean of Students by Dr. Faerman, then serving as Acting Vice President for Student Affairs and subsequently became the permanent Dean of Students.

15. FAU conducted a search for an Assistant Vice President (AVP) position. Ms. Pusey served as Search Committee Chair. The top candidate—an experienced Black woman and FAU alumna—was offered the position, but Dr. Faerman refused to negotiate salary and would not allow reasonable time for family relocation, leading the candidate to decline and to state that Dr. Faerman was not enthusiastic and was too rigid.

16. Dr. Faerman's treatment of this Black woman AVP candidate was markedly different from his treatment of non-Black and/or male candidates; in prior searches, he allowed candidates to negotiate starting salaries and relocation timelines.

17. FAU conducted another AVP search, and Ms. Pusey again served as Search Committee Chair. The top candidate, a younger Puerto Rican woman, was recommended by the search committee. During a lunch meeting, Dr. Faerman expressed a desire to "dump" this candidate, he delayed making a decision on the committee's recommendation for weeks and never extended an offer.

18. Upon information and belief, Dr. Faerman ultimately told the candidate that the university was no longer hiring for the position.

19. Dr. Faerman's treatment of this Latinx woman was markedly different from his treatment of non-Latinx and/or male candidates; in prior instances he moved non-Latinx and/or male candidates quickly through the hiring process.

20. When the Military & Veteran Student Success Center (MVSSC) Director neared retirement, Dr. Faerman initiated a competitive search without informing Ms. Pusey who had previously lead the recruitment process for other high-level positions as Chair of the search committee. Ms. Pusey only

learned a search was underway once on-campus interviews had begun, and she was not invited to chair or participate in the Search Committee despite the fact that Dr. Faerman had indicated that the individual hired would fall under her supervision.

21. At the conclusion of her 2024 performance evaluation, Dr. Faerman further communicated his refusal to expand Ms. Pusey's role, telling her that he had "no intentions of adding to [her] professional lines of supervision at this time" and that any such changes would have to wait until a "new" President was on board. At the same time, he was actively adding supervisory responsibilities and advancement opportunities to the professional portfolios of her male colleagues, reinforcing that promised areas of supervision and growth were being withheld from Ms. Pusey while similarly situated men were favored.

22. Ms. Pusey was excluded from high-level meetings historically attended by Deans of Students, including Board of Trustees and Board of Governors meetings, while male counterparts continued to participate.

23. Ms. Pusey was told she would no longer have a budget for the Dean of Students office and her requests for resources were denied, even as male colleagues (including Brian Fisher) received increased budgets, accelerated salary increases, and additional staff support.

24. Despite her senior role, Ms. Pusey was excluded from the SWAT (student-success) committee while younger, less-experienced colleagues (including Rebecca Goldstein, Jordan Dipentima, and Brian Montalvo) were included; when she questioned this, she was told her participation was "not necessary."

25. Ms. Pusey was excluded from operational planning meetings—tailgate planning, policy revisions, architecture and renovation planning for her own office space, and emergency management—while male colleagues were consistently included.

26. The Dean of Students office name was removed from marketing materials; the office was omitted from divisional videos in which other units were featured; and it became one of the only departments with no social-media presence, limiting Ms. Pusey's institutional visibility and external voice.

27. Throughout 2023 and 2024, Ms. Pusey made over 19 informal complaints to various university officials, including multiple conversations with Bobby Brown (Executive Director & Title IX Coordinator), meetings with Susan Mancha (Associate Director, Employee Relations & Development), and discussions with Vice President for HR Chee Ostinelli.

28. She also raised specific concerns directly with her supervisor, Dr. Faerman, including the August 19, 2023 "cougar" comment by Brian Montalvo, sexist

comments made by Paulo Brida during construction meetings, and an explicitly ageist joke that Dr. Faerman told during a Directors' meeting. In response to these concerns, Mr. Brown twice conducted Division-wide trainings on these issues, confirming that the university was aware of the discriminatory and harassing conduct, yet the discrimination and retaliation continued.

29. During this period, Ms. Pusey was subjected to gender-based discrimination, including sexist comments during meetings, exclusion from male-dominated decision-making processes, and Dr. Faerman's consistent practice of consulting only with male colleagues on matters on which Ms. Pusey should have been consulted.

30. Ms. Pusey was also subjected to age-based discrimination, including an incident on August 19, 2023, when Brian Montalvo made a "cougar" comment during a Red & Blue event in front of over 4,000 students and families. Following this event, Ms. Pusey requested that Dr. Faerman address the inappropriate nature of the joke with Brian Montalvo and requested that training be completed for the Division as a reminder of language that may fall under protected status.

31. On November 30, 2023, Dr. Faerman told an explicitly ageist joke during a Student Affairs Directors' Meeting, in which he stated prior to telling the

joke that it was "going to sound ageist", showing that he had full knowledge of the discriminatory tone of the joke. He proceeded to tell the joke after Brian Montalvo chimed in to state, "That's ok, this is a safe space." This incident occurred less than two months after Ms. Pusey had addressed concerns about the sexist/ageist cougar comment made by Brian Montalvo at the Red & Blue event. This incident displayed the continued retaliation against, and now public mocking of, efforts to address incidents related to discriminatory jokes and environment via "team tag" and social mobbing behaviors. Following this incident, Ms. Pusey directly addressed her concerns about the discriminatory nature of the incident with Dr. Faerman in a one on one supervision session and requested that a second training be completed.

32. On April 9, 2024, during a meeting that was ostensibly convened to discuss unrelated Student Affairs business, Dr. Faerman and Brian Fisher passed a termination letter back and forth in front of Ms. Pusey and discussed it within her sight and hearing without any explanation. The decision to display and discuss a termination letter in that context, in her presence, reasonably conveyed that her position was in jeopardy and further contributed to the intimidation, anxiety, and sense of precarity she experienced in the workplace.

33. Beginning in late Spring 2024, during project and construction meetings regarding her new office space, Facilities representative Paulo Brida made multiple sexist remarks to Ms. Pusey, including comments about "cherry-picking" and referring to her as a "bitch" or words to that effect. Ms. Pusey reported these comments to her supervisor, Dr. Faerman, and requested that he address the behavior.

34. On September 20, 2024, during a walk-through of her new office space to review punch-list items, Ms. Pusey asked Mr. Brida if the "modesty panel" on one side of her desk could be removed because it prevented visitors from sitting across from her.

35. In response to this reasonable and work-related request, Paulo Brida made a sexually inappropriate comment, stating: "Well, maybe you want to keep it because, you know, if you're wearing your mini-skirt you don't want everyone to see."

36. This sexist comment was made in the presence of Brian Fisher, Associate Vice President for Operations, who was standing almost directly beside Ms. Pusey in her office and witnessed the exchange but failed to intervene or address the inappropriate conduct.

37. The hostile work environment severely impacted Ms. Pusey's health, causing multiple documented emotional breakdowns in administrators'

offices, weight gain, elevated blood pressure, a doubling of her depression medication, memory issues, fatigue, and anxiety. On or about May 15, 2023, she required crisis treatment at the Delray Center for Healing.

38. In mid-October 2024, as a result of the cumulative impact of years of discrimination, retaliation, and hostility within the Division, Ms. Pusey was forced to take FMLA medical leave.

39. On February 16, 2025, with her condition significantly worsened, she submitted her resignation with three days' notice, effective February 19, 2025. The conditions imposed by Defendant left her no reasonable alternative but to resign, and her separation from employment therefore constituted a constructive discharge.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

40. Ms. Pusey incorporates hereto and realleges paragraphs 1-39.

41. At all times relevant hereto, Ms. Pusey was a member of a protected class under Title VII as a woman.

42. Ms. Pusey was qualified for her position as Dean of Students, having over 23 years of experience in Student Affairs and consistently receiving the highest performance evaluations prior to engaging in protected activity.

43. Defendant subjected Ms. Pusey to adverse employment actions based on her sex, including but not limited to: exclusion from decision-making processes and meetings that male colleagues attended; denial of promotional opportunities including being excluded from chairing search committees; reduction in job responsibilities while male counterparts' roles expanded; denial of salary increases and advancement opportunities given to male colleagues; subjection to sexist comments and gender-based harassment; retaliation following her attempts to address multiple discriminatory concerns; physical intimidation, and constructive discharge resulting from intolerable working conditions created by age and sex-based discrimination.

44. Similarly situated male employees, including Brian Fisher, Brian Montalvo, and Donald Van Pelt, were treated more favorably than Ms. Pusey, receiving higher salaries in comparison to level of experience, expanded responsibilities; additional support staff and resources; inclusion in high-level meetings and decision-making processes, and advancement opportunities that were denied to Ms. Pusey.

45. As a direct and proximate result of Defendant's intentional sex discrimination, Ms. Pusey has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of

wages, benefits, and advancement opportunities, and has suffered emotional distress, humiliation, and other non-economic damages in amounts to be established at trial.

46. Ms. Pusey requests back pay, front pay or reinstatement, compensatory damages, equitable and injunctive relief, fees and costs.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

47. Ms. Pusey incorporates hereto and realleges paragraphs 1-39.

48. Ms. Pusey engaged in protected activity under Title VII when she complained about discriminatory hiring practices.

49. Ms. Pusey continued to engage in protected activity through her written complaints to Deputy General Counsel Daniel Jones and her subsequent reports to various university officials regarding ongoing discrimination and harassment she experienced.

50. Defendant had actual knowledge of Ms. Pusey's protected activity, as she made her complaints directly to supervisors and university officials responsible for addressing discrimination, submitted written complaints to HR that were referenced in and attached to her performance evaluations, and expressly requested that OCR9 provide at least two trainings for her team and the Division to address the discriminatory comments, practices,

and environment she was experiencing. These complaints and training requests were made at times when issues were escalating and constituted clear efforts by Ms. Pusey to address the discrimination at an educational and awareness level.

51. Following Ms. Pusey's protected activity, Defendant subjected her to materially adverse actions including: systematic exclusion from meetings, conversations, projects, and opportunities; reduction in performance evaluation ratings from "5" to "4"; physical intimidation including door slamming; exclusion from high-level meetings previously attended by the Dean of Students; removal of her office name from marketing materials; denial of opportunities to chair search committees; reduction of her budget while increasing resources for male colleagues; and ultimately constructive discharge.

52. There was a causal connection between Ms. Pusey's protected activity and the adverse employment actions.

53. As a direct and proximate result of Defendant's retaliation, Ms. Pusey has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and benefits, and has suffered emotional distress, humiliation, and other non-economic damages in amounts to be established at trial.

54. Ms. Pusey requests back pay, front pay or reinstatement, compensatory damages, equitable and injunctive relief, fees and costs.

## COUNT III
## HOSTILE WORK ENVIRONMENT BASED ON SEX IN VIOLATION OF TITLE VII

55. Ms. Pusey incorporates hereto and realleges paragraphs 1-39.

56. Defendant subjected Ms. Pusey to unwelcome harassment based on her sex, including but not limited to:

    a. repeated sexist remarks by Facilities representative Paulo Brida during Spring 2024 project and construction meetings regarding the remodeling of her office space (including comments about "cherry-picking" and referring to her as a "bitch" or words to that effect), as well as the September 20, 2024 "modesty panel" comment; a subsequent retaliatory remark by Mr. Brida that he "needed to be careful what he says now because someone complained" after she reported his conduct to her supervisor, Dr. Faerman;

    b. systematic exclusion from male-dominated decision-making processes;

    c. gender-based "social mobbing" after she questioned decisions;

    d. physical intimidation tactics, including door slamming that was particularly distressing given Ms. Pusey's status as a domestic violence survivor; and

    e. the creation and perpetuation of an environment in which male colleagues were consistently favored over female employees.

57. The harassment was sufficiently severe and pervasive to alter the terms and conditions of Ms. Pusey's employment and create an abusive working environment, as evidenced by her documented emotional breakdowns, deteriorating physical and mental health, hospitalization, need for crisis treatment, and ultimate constructive discharge.

58. Defendant knew or should have known of the harassment, as Ms. Pusey made over 19 formal and informal complaints to various university officials, including supervisors, HR personnel, and the Title IX Coordinator, yet Defendant failed to take prompt and effective remedial action.

59. The hostile work environment was objectively and subjectively offensive, creating conditions so intolerable that a reasonable person in Ms. Pusey's position would have felt compelled to resign.

60. As a direct and proximate result of the hostile work environment, Ms. Pusey suffered severe emotional distress, physical health problems, lost wages and

benefits due to constructive discharge, and other damages in amounts to be established at trial.

61. Ms. Pusey requests back pay, front pay or reinstatement, compensatory damages, equitable and injunctive relief, fees and costs.

## COUNT IV
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

62. Ms. Pusey incorporates hereto and realleges paragraphs 1-39.

63. At all times relevant hereto, Ms. Pusey was a member of a protected class under the ADEA, being over 40 years of age at the time she was rehired.

64. Defendant subjected Ms. Pusey to adverse employment actions based on her age, including but not limited to:

    a. ageist comments and jokes by supervisors and colleagues;

    b. denial of advancement opportunities given to younger colleagues;

    c. systematic marginalization of her role and authority; and

    d. constructive discharge.

65. Similarly situated younger employees were treated more favorably than Ms. Pusey, receiving higher salaries, expanded opportunities, and preferential treatment despite Ms. Pusey's greater experience and seniority.

66. The adverse actions taken against Ms. Pusey occurred under circumstances giving rise to an inference of age discrimination, including explicit ageist

comments such as the August 19, 2023 "cougar" comment and November 30, 2023 ageist joke told by Dr. Faerman.

### COUNT V — AGE DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

67. Ms. Pusey incorporates hereto and realleges paragraphs 1-39.

68. FAU violated the FCRA by discriminating against Plaintiff because of her age, including, without limitation:

    a. ageist comments and jokes;

    b. denial of advancement and institutional visibility relative to younger colleagues;

    c. marginalization of role and authority; and

    d. constructive discharge.

69. Similarly situated younger employees were treated more favorably as to pay, responsibilities, inclusion, and advancement.

70. As a direct and proximate result, Plaintiff suffered lost wages and benefits, emotional distress, and other compensable harm.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request the following relief be granted:

A. Grant to Ms. Pusey judgment in her favor and against Defendant under all counts of this Complaint;

B. Order Defendant to make Ms. Pusey whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost because of Defendant's unlawful and discriminatory acts, together with prejudgment interest thereon, all in an amount to be proven at trial;

C. Order that Ms. Pusey be awarded front pay;

D. Order Defendant to compensate Ms. Pusey for mental and emotional damages suffered because of Defendant's unlawful and discriminatory acts, subject to applicable statutory caps;

E. Grant to Ms. Pusey her reasonable attorney's fees and reasonable expert witness fees together with all other costs associated with this action as provided by Title VII, the ADEA, and applicable law; and

F. Grant such additional monetary and equitable relief as the Court deems proper and just.

Dated: December 28, 2025

Respectfully submitted,

*/s/Denise A. Mutamba*
Denise Mutamba Esq.

                                                Attorney for Plaintiff
                                                Florida Bar No. 111727
                                                MDM Legal, PLLC
                                                7754 Okeechobee Blvd, #4-3068
                                                West Palm Beach, FL 33411
                                                Telephone: (561) 872-3601
                                                Email: denise@mdmattorneys.com
                                                *Counsel for Plaintiff*