UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-81619-Cannon/McCabe

AUDREY L. PUSEY,

     Plaintiff,

v.

FLORIDA ATLANTIC UNIVERSITY
BOARD OF TRUSTEES,

     Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint, which was referred to the undersigned by United States District Judge Aileen M. Cannon.  (DE 16, DE 17).  For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **DENIED**.

## I.    BACKGROUND

This is an employment discrimination case arising from Plaintiff Audrey L. Pusey's employment with Defendant Florida Atlantic University Board of Trustees.  (DE 14 ¶¶ 1, 9-13). The Court accepts the following facts as true, taken from Plaintiff's Amended Complaint.  (DE 14).

Plaintiff worked for Defendant in various capacities from 2017 until February 19, 2025, including as Assistant Dean of Student Affairs, Associate Dean of Student Affairs, and Dean of Students.  (DE 14 ¶¶ 17-18, 41).  At all relevant times, Dr. Larry Faerman served as Plaintiff's supervisor.  (DE 14 ¶¶ 25, 32, 35).  According to Plaintiff, Defendant discriminated against her based on sex in numerous ways, including the following:

- Dr. Faerman excluded Plaintiff from the search committee for a new Director of the Military & Veteran Student Success Center.  (DE 14 ¶ 24).

- At the conclusion of Plaintiff's 2024 performance evaluation, Dr. Faerman told her that he had "no intentions of adding to [her] professional lines of supervision" and that any such changes would have to wait until a new president was on board.  (DE 14 ¶ 25).

- Defendant excluded Plaintiff from high-level meetings historically attended by Deans of Students, including Board of Trustees and Board of Governors meetings, while male counterparts continued to participate.  (DE 14 ¶ 27).

- Defendant eliminated Plaintiff's budget as Dean of Students and denied Plaintiff's requests for resources, while male colleagues received increased budgets, accelerated salary increases, and additional staff support.  (DE 14 ¶ 28).

- Defendant excluded Plaintiff from operational planning meetings, tailgate planning, policy revisions, architecture and renovation planning for her own office space, and emergency management, while male colleagues remained included.  (DE 14 ¶ 29).

- Defendant removed the office of Dean of Students from marketing materials, omitted the office from divisional videos, and left the office as one of the only departments without a social-media presence, thereby limiting Plaintiff's institutional visibility and external voice.  (DE 14 ¶ 30).

- On April 9, 2024, during a meeting convened to discuss unrelated Student Affairs business, Dr. Faerman and Plaintiff's colleague Brian Fisher passed a termination letter back and forth in front of Plaintiff and discussed it within her sight and hearing without explanation.  (DE 14 ¶ 34).  This conduct conveyed to Plaintiff

that her position stood in jeopardy and contributed to the intimidation, anxiety, and sense of precarity she experienced in the workplace.  (DE 14 ¶ 34).

Throughout 2023 and 2024, Plaintiff made more than 19 informal complaints to university officials, including Bobby Brown, Executive Director and Title IX Coordinator; Susan Mancha, Associate Director of Employee Relations and Development; and Chee Ostinelli, Vice President for Human Resources.  (DE 14 ¶ 31).  At some point, Plaintiff also made written complaints to Deputy General Counsel Daniel Jones.  (DE 14 ¶ 55).  On June 24, 2024, she also made an initial inquiry with the EEOC, alleging discrimination in the workplace.  (DE 14 ¶ 3).

Plaintiff alleges that Defendant retaliated against her by subjecting her to additional adverse employment actions in response to her complaints.  (DE 14 ¶¶ 54-57).  The retaliatory adverse actions included further exclusion from meetings, conversations, projects, and opportunities; reduction in performance evaluation ratings from "5" to "4"; physical intimidation, including door slamming; and, ultimately, Plaintiff's constructive discharge.  (DE 14 ¶ 57).

Plaintiff also alleges that Defendant created a hostile work environment that impacted her health, causing multiple documented emotional breakdowns, weight gain, elevated blood pressure, a doubling of her depression medication, memory issues, fatigue, and anxiety.  (DE 14 ¶ 39).  On or about May 15, 2023, Plaintiff required crisis treatment at the Delray Center for Healing.  (DE 14 ¶ 39).  In mid-October 2024, Plaintiff took FMLA medical leave as a result of the cumulative impact of years of discrimination, retaliation, and hostility within the workplace.  (DE 14 ¶ 40).  On February 16, 2025, Plaintiff alleges that her condition significantly worsened, causing her to submit her resignation.  (DE 14 ¶ 41).  Plaintiff alleges that the conditions imposed by Defendant left her no reasonable alternative but to resign, such that her separation should be deemed a constructive discharge.  (DE 14 ¶ 41).

Based on these allegations, Plaintiff brings the following claims:

| Count | Claim |
|-------|-------|
| 1 | Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. |
| 2 | Retaliation in Violation of Title VII |
| 3 | Hostile Work Environment Based on Sex in Violation of Title VII |

(DE 14).

## II.     LEGAL STANDARD

Defendant brings this motion pursuant to Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4

### III.   <u>DISCUSSION</u>

Plaintiff alleges three claims for relief, each of which the Court will address in turn.

### A.   **Count 1 – Sex Discrimination**

Count 1 alleges a claim for sex discrimination in violation of Title VII.  (DE 14 ¶¶ 42-52).  Plaintiff alleges that Defendant discriminated against her by, among other things, constructively discharging her based on sex.  (DE 14 ¶¶ 42-52).  Defendant does not seek to dismiss this count.  Instead, Defendant seeks merely to "limit" or "clarify" the factual and temporal scope of the count.  (DE 16 at 7, DE 21 at 1-2).  The Court denies this relief as the Court finds no limitation or clarification necessary.

As to factual scope, Defendant urges the Court to limit Count 1 solely to the content of Plaintiff's EEOC charge of discrimination.  (DE 16 at 7-9, DE 21 at 1-4).  The Court agrees that, as a general rule, a Title VII complaint must be limited to the scope of the original EEOC charge of discrimination as well as any "EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004).  In this case, however, Defendant has not provided the Court with a copy of Plaintiff's EEOC charge.  As such, the Court cannot make any assessment of whether Count 1 exceeds the scope of the charge or the investigation that could reasonably be expected to grow out of the charge.  The Court therefore denies this request for relief.

As to temporal scope, Defendant urges the Court to limit or clarify that Plaintiff cannot seek relief for conduct that occurred more than 300 days prior to Plaintiff's filing of her EEOC charge.  (DE 16 at 7-9, DE 21 at 1-4).  The Court agrees that a Title VII plaintiff may only seek relief for discrete acts occurring within 300 days prior to the filing of the EEOC charge.  *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002).  Here, Plaintiff filed her EEOC charge on January 13, 2025, so the 300-day window runs from March 19, 2024 through

January 13, 2025.  (DE 14 ¶ 3).  Count 1 alleges multiple acts of alleged discrimination within the 300-day window.  (DE 14 ¶¶ 25-30, 34-38, 41, 45-50).  As such, Count 1 satisfies the temporal scope of Title VII.

Defendant nevertheless seeks this relief, apparently because the Amended Complaint *also* includes facts outside the 300-day window.  In the Court's view, the mere fact that a pleading contains facts outside the 300-day window does not mean the pleading should be dismissed, limited, or clarified.  A plaintiff may include such facts—at both the pleading stage and at trial— as part of the background evidence to support a timely claim of discrimination.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (noting that Title VII does not "bar an employee from using [unexhausted] prior acts as background evidence in support of a timely claim"); *Babb v. McDonough*, No. 8:14-CV-1732-VMC-TBM, 2022 WL 16855841, at *2 (M.D. Fla. Nov. 10, 2022), *aff'd*, 2025 WL 1767957 (11th Cir. June 26, 2025) (noting that "where the employer's intent is at issue," unexhausted prior acts may serve as circumstantial evidence of … retaliatory animus"); *Smith v. City of Atl. Beach*, No. 3:18-CV-1459-J-34MCR, 2020 WL 708145, at *8 n.7 (M.D. Fla. Feb. 12, 2020) (noting "the City's contention that Smith failed to exhaust these allegations is misplaced" because Title VII does not bar unexhausted prior acts as background evidence in support of a timely claim and collecting cases).

In short, the Court finds no basis to order that Count 1 be amended, limited, or clarified. To the extent Defendant wishes to exclude evidence outside the 300-day window from the trial of this case, Defendant may file a motion in limine at the appropriate time to seek that relief.  In the meantime, this motion should be denied.

Defendant also requests, in a footnote, that the Court strike paragraphs 19 through 23 of the Amended Complaint, which pertain to race and sex-based treatment of other job candidates. (DE 16 at 7 n.1).  Pursuant to Fed. R. Civ. P. 12(f), a court may "strike from a pleading ... any

redundant, immaterial, impertinent, or scandalous matter." Courts view motions to strike as a drastic, disfavored remedy. *Zononi v. CHW Group, Inc.*, No. 22-CV-14358, 2023 WL 2667941, at *6 (S.D. Fla. Mar. 7, 2023). Such motions should not be granted "unless the material has no possible relation to the controversy and may cause prejudice to one of the parties." *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 700 (S.D. Fla. 2013). Applying that standard here, the Court finds no basis to strike the paragraphs at issue.

### B.    Count 2 – Retaliation

Count 2 alleges a Title VII retaliation claim in violation of 42 U.S.C. § 2000e-3, which provides as follows:

> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

(DE 14 ¶¶ 53-62). The Eleventh Circuit has described the elements of a Title VII retaliation claim as follows:

> To succeed on [his/her] claim, [name of plaintiff] must prove each of the following facts by a preponderance of the evidence:
>
> First: [Name of plaintiff] engaged in a protected activity;
>
> Second: [Name of defendant] then took an adverse employment action;
>
> Third: [Name of defendant] took the adverse employment action because of [name of plaintiff]'s protected activity; and
>
> Fourth: that the adverse employment action caused [name of plaintiff]'s damages.

*See* Eleventh Circuit Pattern Jury Instructions (Civil) § 4.22.

Defendant urges the Court to dismiss Count 2 for failure to allege facts that show a prima facie case of retaliation under the burden-shifting framework of *McDonnell Douglas Corp. v.*

7

*Green*, 411 U.S. 792 (1973).  (DE 16 at 9-10). The Court rejects this argument as the Eleventh Circuit has repeatedly instructed district courts not to apply *McDonnell Douglas* at the pleadings stage.  *See*, *e.g.*, *Hernandez v. CareerSource Palm Beach Cnty., Inc.*, No. 23-12285, 2025 WL 1541367, at *1-4 (11th Cir. May 30, 2025).  As the Eleventh Circuit has noted, the Supreme Court devised the *McDonnell Douglas* test as a tool to be applied at summary judgment; it was never meant to test the sufficiency of a complaint.  *See Davis v. Miami-Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *3 (11th Cir. Sept. 5, 2024) ("[W]e've squarely held that *McDonnell Douglas* is the wrong legal standard to apply at the pleading stage and have reversed district court dismissals for using it to assess the sufficiency of a complaint.") (cleaned up).

To survive dismissal in a Title VII retaliation case, a complaint need not satisfy the elements of a *McDonnell Douglas prima facie* case.  Instead, a complaint need only "provide enough factual matter to plausibly suggest intentional discrimination or retaliation."  *Smith v. Pepsi Bottling Group*, No. 24-11597, 2026 WL 937070, at *6 (11th Cir. Apr. 7, 2026) (cleaned up).  Applying that standard here, and construing all reasonable inferences in Plaintiff's favor, the Court finds that Count 2 states a plausible claim for retaliation.

The Court has considered, but finds unpersuasive, Defendant's argument that Count 2 should be dismissed for failure to allege facts that show Defendant took an adverse employment action against Plaintiff because of Plaintiff's protected activity.  (DE 16 at 9–11) (arguing that Plaintiff failed to satisfy the causal link element of a *McDonnell Douglas* prima facie case).  In support, Defendant argues that, although Plaintiff identifies numerous purported acts of protected activity and numerous purported adverse actions, she does not provide the dates of all relevant events.  (DE 16 at 9-11, DE 21 at 4-5).  As such, Defendant argues, Count 2 fails to allege that each adverse action chronologically followed each protected activity.  (DE 16 at 11, DE 21 at 4-5).  Defendant argues that the lack of clear dates renders Count 2 implausible.

8

The Court agrees that, as a matter of logic, a plaintiff cannot show but-for causation unless the adverse action chronologically follows the protected activity.  In this case, however, Plaintiff alleges multiple acts of protected activity and multiple adverse employment actions.  In the Court's view, a complaint need not connect the dots between every protected activity and every adverse employment action.  Instead, to survive dismissal, a complaint need only allege one adverse employment action that gives rise to a plausible claim for relief.  *See Sutherland v. City of Pembroke Pines*, No. 25-cv-60723, 2025 WL 3055139, at *11 (S.D. Fla. Oct. 15, 2025) (finding that, although many of plaintiff's alleged retaliatory acts did not qualify as adverse employment actions, plaintiff nevertheless satisfied the pleading requirement by way of her forced resignation and denial of compensation).

Here, Plaintiff alleges multiple adverse employment actions, including her constructive discharge on February 16, 2025.  (DE 14 ¶ 41).  As a matter of chronology, the constructive discharge followed all of the alleged protected activity, including the making of "19 informal complaints throughout 2023 and 2024" (DE 14 ¶ 31); the EEOC inquiry on June 24, 2024 (DE 14 ¶ 3); the EEOC charge on January 13, 2025 (DE 14 ¶ 3); and the amended EEOC charge on January 22, 2025 (DE 14 ¶ 4).  As such, the Court rejects this argument for dismissal.[1]

### C.      Count 3 – Hostile Work Environment

Count 3 alleges a claim for hostile work environment under Title VII.  (DE 14 ¶¶ 63-70).  The Eleventh Circuit has described the elements of a Title VII hostile work environment claim as follows:

> To succeed on [his/her] claim against [name of defendant], [name of plaintiff] must prove each of the following facts by a preponderance of the evidence:

---

[1] Defendant also asks the Court to limit or clarify the factual and temporal scope of Count 2 for the same reasons raised as to Count 1.  (DE 16 at 7-9, DE 21 at 1-4).  The Court denies this request for the reasons explained in part III.A above.

First: [Name of plaintiff]'s supervisor harassed [him/her] because of [his/her] [race/religion/sex/national origin];

Second:  The harassment created a hostile work environment for [name of plaintiff]; and

Third: [Name of plaintiff] suffered damages because of the hostile work environment.

…

A "hostile work environment" created by harassment because of [race/religion/sex/national origin] exists if:

(a) [name of plaintiff] was subjected to offensive acts or statements about [race/religion/sex/national origin] – even if they were not specifically directed at [him/her];

(b) [name of plaintiff] did not welcome the offensive acts or statements, which means that [name of plaintiff] did not directly or indirectly invite or solicit them by [his/her] own acts or statements;

(c) the offensive acts or statements were so severe or pervasive that they materially altered the terms or conditions of [name of plaintiff]'s employment;

(d) a reasonable person – not someone who is overly sensitive – would have found that the offensive acts or statements materially altered the terms or conditions of the person's employment; and

(e) [name of plaintiff] believed that the offensive acts or statements materially altered the terms or conditions of [his/her] employment.

To determine whether the conduct in this case was "so severe or pervasive" that it materially altered the terms or conditions of [name of plaintiff]'s employment, you should consider all the circumstances, including:

(a)  how often the discriminatory conduct occurred;

(b)  its severity;

(c)  whether it was physically or psychologically threatening or humiliating; and

(d)  whether it unreasonably interfered with [name of plaintiff]'s work performance.

*See* Eleventh Circuit Pattern Jury Instructions (Civil) § 4.6.

10

Defendant urges dismissal of Count 3 for failure to allege facts that show the alleged harassment rose to the level of "severity" or "pervasiveness" necessary to show a hostile work environment. (DE 16 at 3-7). As Defendant correctly points out, courts apply a demanding standard to hostile work environment claims to prevent civil rights statutes from being converted into a "general civility code." *See Oncale v. Sundowner Offshore Servs.*, Inc., 523 U.S. 75, 81 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not constitute a hostile work environment. *Edgerton v. City of Plantation*, No. 14-61472-CIV, 2016 WL 8943943, at *6 (S.D. Fla. Aug. 17, 2016), *aff'd*, 682 F. App'x 748 (11th Cir. 2017).

On review of the allegations here, the Court questions Plaintiff's ultimate ability to prevail on Count 3. Indeed, courts have dismissed or granted summary judgment on hostile work environment claims that involved far more egregious workplace behavior. *See*, *e.g.*, *Godoy v. Habersham County*, 211 F. App'x 850, 853-54 (11th Cir. 2006) (affirming summary judgment where supervisor subjected South-American plaintiff to racial slurs and told him "to go back to his boat and sail to South America where he belongs"); *Barrow v. Ga. Pacific Corp.*, 144 F. App'x 54, 57 (11th Cir. 2005) (affirming summary judgment where supervisors called plaintiff the "N word," threatened to "kick [his] black ass," and where other employees displayed a rebel flag, a KKK symbol, and a noose in front of him); *Thompson v. City of Miami Beach, Fla.*, 990 F. Supp. 2d 1335, 1341 (S.D. Fla. 2014) (dismissing claim where supervisor repeatedly referred to plaintiff using the "N word").

Nevertheless, the Court finds the allegations of Count 3 minimally sufficient to survive dismissal. The Court reaches this conclusion, in part, because Defendant did not move to dismiss Count 1 and because the Court has denied the motion to dismiss Count 2. As such, the undersigned recommends that the District Judge allow Count 3 to survive dismissal and proceed

11

to discovery.  Defendant remains free to revisit Count 3 at summary judgment with the benefit of a full factual record.  In the meantime, the motion should be denied.

## IV.     RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

For the reasons stated above, the undersigned **RECOMMENDS** that the motion (DE 16) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 23rd day of June 2026.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE

12